(Decided July 11th, 1866.)

WILLIAM A. DEAN *vs.* ISAAC OPPENHEIMER, CLAIMANT AND GARNISHEE OF ERNEST OPPENHEIMER.

ATTACHMENT ON ORIGINAL PROCESS: ACT OF 1864, CH. 306: MOTION TO QUASH: AFFIDAVIT,—FORM OF.—In the affidavit required by the Act of 1864, ch. 306, as the ground-work of the attachment, the oath of the party making the affidavit that "*he knows*, or has good reason to believe, that E. O. had assigned," &c., is insufficient,—the law requiring that, he should swear that "the *plaintiff* knows or believes," &c.; and the variance from the requirements of the law is sufficient of itself to sustain a motion to quash the attachment.

A SHORT NOTE merely specifying an indebtedness, without stating the cause of action, is also insufficient on a motion to quash.

APPEAL from the Court of Common Pleas of Baltimore city:

The proceeding out of which this appeal arises, was similar to that in the case of *Howard, et al. vs. Oppenheimer, ante p.* 350. On the 15th of June, 1864, the appellant caused to be issued from the Court of Common Pleas of Balti-Baltimore city, against Ernest Oppenheimer on attachment on original process, under the Act of 1864, ch. 306. The affidavit filed in the case with the account and bond, made by Charles Stinchcomb, clerk of the appellant, states: "that Ernest Oppenheimer is *bona fide* indebted unto William A. Dean in the sum of four hundred and forty-two dollars and twenty-two cents over and above all discounts, and that the said *Charles Stinchcomb* knows, or has good reason to believe, that the said Ernest Oppenheimer has assigned, disposed of or concealed, or is about to assign, dispose of or conceal his property, or some portion thereof, with intent to defraud his creditors; that the said Ernest Oppenheimer fraudulently contracted the debt or incurred the obligation respecting which the action was brought; and that the said Ernest Oppenheimer has, or is about to remove his property, or some portion thereof, out of this State, with intent to defraud his creditors."

On the same day the writ of attachment and usual writ of summons were issued, and the plaintiff filed his short note in the following words and form:

"William A. Dean

*vs.*  } Action in the Court of Common Pleas for Baltimore

Ernest Oppenheimer. city.

This suit is instituted to recover the sum of four hundred and forty-two dollars and twenty-two cents, due and owing from the defendant to the plaintiff."

The short note was signed by the plaintiff's attorneys.

On the 16th of June, the attachment was returned—"attached as per schedule," and Isaac Oppenheimer, the appel-

47    v. 25.

lee, appeared as claimant of the property, and filed a motion to quash the attachment for the following reasons:

1st. Because Ernest, the defendant, had no interest in the property attached, which belonged to him, Isaac. 2nd. Because of defects apparent on the face of the papers. 3rd. Because of irregularity in the proceedings. 4th. Because of a failure to comply with the provisions of the attachment law.

The case was set down for hearing; evidence was offered by the claimant to sustain the first of said reasons, and by the plaintiff to rebut the claimant's evidence and sustain the levy. The points upon which this Court have rested its opinion render it unnecessary to state the facts of the case more particularly.

The motion to quash was afterwards argued, and the Court (KING, J.,) on the 9th of July, 1868, by its order of that date, sustained the motion and quashed the attachment, and the plaintiff appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*John D. Lipscomb,* for the appellant:

This being a proceeding under an Act of Assembly, before a tribunal of special and limited jurisdiction, there can be no power in the Court other than that granted by statute. The mode of procedure and time of return of the writ are prescribed by the statute to the Court, which the Court has no authority to alter. In this case the writ issued on the 15th day of June, and was made returnable on the second Monday of September following, but the Court ordered the writ to be returned immediately, which was done on the 16th day of June. Article 10, sec. 21 of the Code of Public General Laws, prescribes the only circumstances under which, such writs may be returned before the regular return day,

viz: in case of an absent defendant, and this, not being such a case, the Court erred in not dismissing the motion to quash. *Ranahan vs. O'Neale*, 6 *G. & J.*, 298 and 301.

2nd. The motion to quash should have been dismissed, because the proceedings appear by the record to have been regular, and because it appears " on the face of the papers, that the requirements of the statute, have been substantially complied with." *Drake on Atta.*, *ch.* 5, *secs.* 107 and 113, 144, 120, 126, 127. *Matthews & Zollikoffer vs. Dare & McLure*, 20 *Md. Rep.*, 248. *Bank of Commerce vs. Rutland*, 10 *Howard Pract. Rep.*, 7. *Houston vs. Belchor*, 12 *Sm. & Mar.*, 514.

3rd. The Court erred in going without the intervention of a jury, upon motion to quash, into a full trial of the whole merits of the case.

It is true, that under the practice in Maryland, previous to the Act of 1864, every fact is cognizable by the Court, which will show the attachment issued irregularly, or to show the property attached does not belong to the defendant, but questions relating to the merits of the dispute between the parties, were not allowed to be heard, at such times, upon such a motion. The Act of 1864, was passed for the express purpose of trying the question of fraud by attachment, the debt is not considered, a separate case being docketed for that purpose, so that the real, and in fact, only question in dispute in the attachment, is the question of fraud alleged, for the trial of which the attachment issues; fraud, therefore, constitutes the merits of the case, and, as under the old law, the Court could not inquire into the merits of the case, which was debt, so under the present Act, the Court cannot go into the merits of the case, fraud, upon a summary motion to quash, heard before itself.

This too, clearly, was the intention of the Legislature, to give to parties charging fraud in such cases the benefit of a trial by jury. *Drake on Atta.*, *ch.* 15, *secs.* 403, 404. *ch.*

16, *secs.* 384, 417. *Shrewsbury vs. Pearson,* 1 *McCord,* 331. *Campbell vs. Morris,* 3 *H. & McH.,* 535. *Bank of Commerce vs. Rutland,* 10 *Howard Pract. Rep.,* 7. *Twyne's Case,* 1 *Smith's Lead. Cases, p.* 11, (*marginal.*)

4th. Even in the testimony which was admitted, there was fraud sufficient before the Court to justify it in dismissing the motion to quash, so as to allow the cause to be tried regularly. *Enders vs. Williams,* 1 *Medcalf's Ky. Rep.,* 346, 351, 352, 353, &c. *Smith vs. Welch & others,* 10 *Wisconsin,* 91. *Thompson vs. Geck,* 21 *Illinois,* 73.

*Twyne's case* lays down the badges of fraud, nearly all of which appear in this case.

5th. The Court erred in rejecting the evidence. "In questions of fraud any fact, however slight, if at all relevant to the issue, will be admitted in evidence." ( 20 *Md. Rep.,* 93.) The Act of 1864 was passed for the purpose of trying the question of fraud in the grantor alone, as its provisions clearly show, and how is such fraud to be proved, except by giving evidence of the grantor's acts and words ? As between the grantor and grantee, the grantor may not invalidate his own deed, but creditors, charging a fraudulent sale, should be allowed to shew in evidence what the grantor did and said at the time of, and in reference to, said sale. Here is a peculiar remedial act, and the effort should be to sustain it, rather than destroy its effect, which must be the sure result if the Court below was right in rejecting all testimony which went to shew fraud in the grantor, on the hearing of a motion where the grantee is claimant. Act of 1864, ch. 306. *Curtis vs. Moore,* 20 *Md. Rep.,* 93. *Kolb vs. Whitely,* 3 *G. & J.,* 188. *Glenn vs. Baker,* 1 *Md. Ch. Dec.,* 73. *Crawford vs. Brooke,* 4 *Gill,* 43. *Waters vs. Dashiell,* 1 *Md. Rep.,* 455.

6th. The objections made by the appellee to the form of the attachment cannot be entertained, because a claimant of property has no right to make such objections.

Dean *vs.* Oppenheimer.

*B. F. Horwitz*, for the appellee, argued:

1st. That under the bill of exceptions, signed and sealed in this case, which contains the evidence taken to sustain and rebut the first reason assigned in the claimant's motion to quash, there is but one question before this Court; although that bill of exceptions, in fact, contains three exceptions: two on the admissibility of evidence, and one other on the granting of the motion to quash. The last is the only one signed and sealed, and is, therefore, the only one before this Court. *Ellicott vs. Martin, Love & Co.,* 6 *Md. Rep.,* 516.

This exception raises the question of the ownership of the property contained in the first reason of the claimant for quashing the attachment. Under the attachment system of Maryland, the owner of property attached, in an attachment issued against a third party, not only has the right, but is bound, " on the return of that attachment, to appear in Court and move to have the attachment quashed "—" either for an apparent defect in the proceedings," or " by showing the property attached does not belong to the defendant." *Campbell vs. Morris,* 3 *H. & McH.,* 552, 553. *Ranahan vs. O'Neale,* 6 *G. & J.,* 298. *Lamden vs. Bowie,* 2 *Md. Rep.,* 334. *Trieber vs. Blocher,* 10 *Md. Rep.,* 14. *Evans' Prac.,* 238, 239.

The Act of 1864, ch. 306, in sec. 44, on page 415, declares that " the practice and proceedings under the writ of attachment issued under its provisions, shall, in all respects not provided for in that Act, conform to the practice and proceedings under attachments against non-resident and absconding debtors."

The next question then is, does the evidence contained in the bill of exceptions prove that the goods seized by the sheriff under the attachment did, at the time of the seizure, belong to Isaac Oppenheimer? Nothing it seems could be clearer. The claimant offered in evidence a deed to him of

certain property, which the deputy sheriff who made the seizure and a clerk in the store show to be the same property as that seized; the deed is dated the 3rd day of June; the seizure was made on the 16th of June following.

"The *prima facie* proof of the deed, as to the consideration for which it was executed, is neither contradicted nor assailed by any direct evidence in the case; and in the absence of such evidence the deed must be held unaffected." *Faringer vs. Ramsay,* 2 *Md. Rep.,* 375. *Glenn vs. Grover,* 3 *Md. Rep.,* 226. *Moore vs. Blondheim,* 19 *Md. Rep.,* 176.

2nd. The attachment laws being in derogation of the common law rights of the citizen, they have always been strictly construed; and if any of the proceedings are defective, the defects may be taken advantage of at any stage of the proceedings. *Brown vs. Somerville,* 8 *Md. Rep.,* 460. *Barr vs. Perry,* 3 *Gill,* 319, 320. And this Act of 1864, in section 41, page 414, expressly says, "every attachment issued without a bond and affidavit," as required by the Act, "is declared illegal and void, and shall be dismissed."

They are both, it is submitted, full of defects:

1st. The 38th section, on the 14th line thereof, declares that the affidavit shall state "that the *plaintiff* knows, or has good reason to believe," &c.; the affidavit in this case is, that "*Charles Stinchcomb* knows," &c.

2nd. The charges in the affidavit are all in the alternative —they should be specific and distinct—so that, if false, the party swearing falsely could be prosecuted for perjury; this *must* be the design and intent of the law:—that the plaintiff is entitled to his attachment if he can swear to *any one* of the several things set forth in the Act, but swearing to them all in the alternative is, it is submitted, swearing to *nothing,* especially in a proceeding which is to be construed strictly, and a proceeding, too, which is declared to be under "a special limited jurisdiction, conferred by Act of Assembly."

*Risewick vs. Davis, Garnishee of Forwood,* 19 *Md. Rep.,* 82 ; and in the same case at foot of page 92, this Court says : "unless the Court can superintend and control the writ by keeping *it* within the *design and intent* of the Act, it becomes an engine of great oppression and abuse."

3rd. Section 39 of chapter 306, declares that "at the time of making the affidavit the plaintiff shall *produce* the bond, account, or other evidence of debt by which said debtor is indebted," that is, shall *produce* to the clerk ; this language is precisely the same as that of the attachment law, section 4, Article 10, page 45, 1st Code, as re-enacted from the orinal Act of 1795, ch. 56. Under this provision it has always been held necessary that the account should be produced to the party before whom the plaintiff made the affidavit, and that such party should so state in his certificate, and this is the practice, under both acts, in all the Courts.

There is no evidence that the account filed in this case was ever *produced* before the Clerk of the Court of Common Pleas. *Evans' Practice,* 68. *Bowerman vs. Israel, &c.,* 1 *Gill,* 372. *Prentiss, &c., vs. Gray,* 4 *H. & J.,* 192. *Dawson vs. Brown, &c.,* 12 *G. & J.,* 53.

4th. The 41st section of the Act, page 414, provides that the bond shall be "conditioned for satisfying all costs which may be awarded to such defendant or defendants, *or to any other persons interested in the proceedings,* and all damages," &c.

The bond in this case is conditioned "to pay and satisfy Ernest Oppenheimer all costs in said suit and such damage," &c., omitting the important words, "or to any other persons interested in the proceedings," words of substance clearly designed to meet just such a case as the present, where the injury is not to the defendant, but to the "other persons interested in the proceedings," *that is,* the claimant and owner of the property taken under the attachment. The latter part of the clause clearly shows this to be the intent. It

does not say any suit which the defendant may bring, but "which may hereafter be brought;" the obligee to is not the defendant, but the State, showing the same intent.

5th. The same section requires the bond to be *approved* by the clerk ; in this case there was *no such approval.*

The record, says, that Charles Stinchcomb filed with the clerk the following bond, which the clerk as a ministerial officer was bound to file ; and nothing more is shown in reference to this bond which the law requires to be submitted to the clerk for his approval ; there is nothing to show that he exercised *the judgment* with which he is invested in reference to the *approval, not* the filing the bond. "In a case within a special limited jurisdiction, the power to act must appear on the face of the proceedings, or be proved at the trial." *Risewick vs. Davis, Garnishee,* 19 *Md. Rep.,* 91.

6th. The bond does not state, as required by the 41st section of the Act, when the writ of attachment is returnable, which, independently of that requirement, would seem to be too indefinite in an express statutory proceeding of this sort. *McCabe vs. Ward,* 18 *Md. Rep.,* 505.

7th. The short note filed in this case, as required by the 10th section of Article 10, of 1st Code, page 47, is manifestly defective. The language of the law is, "a *declaration* or short note expressing the plaintiff's *cause of action* shall be filed," &c. As to the importance of the short note or declaration, see *Stone vs. Magruder,* 10 *G. & J.,* 385.

This short note contains no cause of action, it merely sets forth an indebtedness. It does not say if it is for goods bargained and sold, or work done, or money lent, or money paid, or money received for plaintiff's use, or money found to be due on accounts stated, or on promissory notes, or bills of exchange, or for what ; certainly this cannot be a "declaration or short note," or else practitioners have taken a great deal of unnecessary trouble ever since we find any "short notes or declarations" in the Court proceedings of this State.

Dean *vs.* Oppenheimer.

WEISEL, J., delivered the opinion of this Court.

The attachment proceeding in this case was under the Act of 1864, ch. 306, and the order appealed from is one sustaining a motion to quash made on behalf of the appellee, as garnishee and claimant of the property seized under the writ. A similar proceeding and motion took place in the case of George W. Howard and others against the same defendant, which was argued in this Court upon appeal in connexion with this, and which has been decided at the present term. Many of the points in that case are the same with those in this appeal, and the opinion filed in it will be found applicable to them. We find in this case one defect in the affidavit made as the ground-work of the attachment, which is sufficient of itself to sustain the motion to quash, and that is the part in which Charles Stinchcomb, the person making the affidavit, swears that he, Stinchcomb, knows or has good reason to believe that Ernest Oppenheimer had assigned, &c. The law requires that the affidavit should be "the plaintiff knows or believes," &c. The affidavit is variant from that which the law prescribes as one of the conditions upon which the right to proceed by attachment in the cases given is granted. We also consider the short note filed in the case as insufficient, inasmuch as it merely specifies an indebtedness without stating the cause of action.

We deem it unnecessary to notice any other peculiarities in this case, having gone much at large into a consideration of those questions which arose in the other case and which were discussed also in this.

*Order affirmed.*

(Decided July 11th, 1866.)